UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SELECT REHABILITATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-01971-AGF |
| | ) | |
| BENCHMARK HEALTHCARE OF | ) | |
| HARRISONVILLE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiff Select Rehabilitation, Inc. ("Select") for summary judgment on Counts I and II of Plaintiff's complaint[1]. For the reasons set forth below, the motion shall be granted.

## BACKGROUND

Select brought this diversity action against Defendants Benchmark Healthcare of Harrisonville, LLC; Harrisonville Healthcare, LLC; Benchmark Healthcare of Lee's Summit, LLC; Benchmark Healthcare of Lexington, LLC; Benchmark Healthcare of Raytown, LLC; Benchmark Healthcare of Monet, LLC; Benchmark Healthcare of St. Charles, LLC; Benchmark Healthcare of Willowbrooke, LLC; Benchmark Healthcare of Wildwood, LLC (collectively, the "Benchmark Facilities"); and Benchmark Healthcare Group, Inc. and Benchmark Healthcare Management, LLC (all of the foregoing entities, collectively, the "Defendants") seeking to recover payments due to Select for certain

---

[1] Plaintiff has not moved for Summary Judgment on Count III.

therapy services provided to the Benchmark Facilities.

Viewing the facts in the light most favorable to Defendants, the record establishes the following. Select, an Illinois corporation with its principal place of business in Illinois, provides speech, physical, and occupational therapy services at skilled nursing facilities, hospitals, and outpatient centers. All Defendants except one, which is a Missouri corporation with its principal place of business in Missouri, are limited liability companies "organized under the law of the State of Missouri," and "upon information and belief, none of the members of any of the limited liability company Defendants are citizens of Illinois." (Doc. No. 29 at 4-5.)[2]

Select provided therapy services to the Benchmark Facilities pursuant to written Therapy Services Agreements with these facilities. The Therapy Services Agreements were assigned to Select by EnduraCare Therapy Management, Inc. Despite accepting Select's services, the Benchmark Facilities failed to pay for these services.

As a result of the failure to pay, on or about January 15, 2013, Select entered into a Payment Plan Agreement with each of the Defendants. In the Payment Plan Agreement, the Benchmark Facilities admitted owing Select $2,251,538.06 ("Principal Amount"), in addition to amounts not yet invoiced. (Doc. No. 41-3 at 3.) Each

---

[2] Select alleges that this Court has subject matter jurisdiction under 28 U.S.C. § 1332. Specifically, Select asserts that there is complete diversity between the parties because based on "information and belief," none of the members of the Defendant limited liability company is an Illinois citizen. Select also asserts that the amount in controversy exceeds $75,000. Defendants do not specifically deny these allegations, so the Court will deem these allegations admitted and find diversity jurisdiction exists in this case. *See* Fed. R. Civ. P. 36(a)(4)("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter.")

Benchmark Facility also agreed to be jointly and severally liable for the debt of the others, and to pay all new invoices issued by Select for therapy services performed in December 2012 and thereafter promptly when due. *Id*. at 7-8. As additional security for payments for the Principal Amount and invoices for services in and after December 2012, Benchmark Healthcare Group, Inc. and Benchmark Healthcare Management, LLC ("Guarantors") individually and collectively guaranteed the payment obligations of the Benchmark Facilities, including "attorneys' fees and costs." *Id*. at 10. The Payment Plan Agreement provided that Select may "seek to recover unpaid amounts due . . . from such Guarantors"; and "[e]ach Guarantor shall be regarded, and shall be in the same position, as principal debtor with respect to the Debt." *Id*. at 10-11.

The Benchmark Facilities also executed a Promissory Note (the "Note") in favor of Select and agreed to pay Select the Principal Amount, plus interest at the rate of 10% per annum on the unpaid principal balance in the event of a default. (Doc. No. 41-4 at 2.) The Note also provides for the recovery of attorneys' fees and costs. *Id*. at 3. The Guarantors unconditionally guaranteed all amounts due Select under the Note.

In reliance on the guaranty, Select continued to provide therapy services to the Benchmark Facilities from December 2012 to October 2013, and invoiced the Benchmark Facilities $1,099,901.21.

Select has made demands on the Defendants for payments of amounts due under the Payment Plan Agreement and the Note. Yet the Principal Amount and additional charges for services rendered from December 2012 to October 2013 remain due and owing to Select.

Select moves for summary judgment on Counts I and II of the complaint.[3] Select alleges breach of the Payment Plan Agreement and the Note and asks for damages in the total amount of $3,720,932.30, representing the Principal Amount, damages for services rendered from December 2012 through October 2013 in the amount of $1,099,901.21, and interest on the Principal Amount in the amount of $369,493.15, plus costs and reasonable attorneys' fees.

Defendant filed a statement of no response. (Doc. No. 45.)

## **DISCUSSION**

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005). If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. P. 56(e); *See also Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trs*, 558 F.3d 731, 735 (8th Cir. 2009) ( "It was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact. …[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.") (internal citation omitted).

---

[3] Count I is a claim for breach of the Payment Plan Agreement. Count II is a claim for breach of the Note. Select does not seek summary judgment with respect to Count III, which is a claim for Confession of Judgment.

According to the contractual terms, both the Payment Plan Agreement and the Note are governed by Missouri law. A breach of contract action under Missouri law requires that (1) a contract between the plaintiff and the defendant exists; (2) the plaintiff had rights and the defendant had obligations under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages. *Guidry v. Charter Commc'ns, Inc.*, 269 S.W.3d 520, 527 (Mo. Ct. App. 2008). There is no dispute that the valid Payment Plan Agreement was breached by the Benchmark Facilities for failure to make payment for services provided by Select on the Principal Amount and the additional amount invoiced for services provided in December 2012 and thereafter. The Principal Amount is listed in the Payment Plan Agreement and supported by detailed invoices. And there is no dispute regarding the additional $1,099,901.21 owed for services provided from December 2012 through October 2013. The Court will therefore grant summary judgment on Count I in favor of Select as against the Benchmark Facilities.

Likewise under Missouri law, to prevail on a promissory note, Select must prove (1) a valid promissory note exists signed by the maker; (2) a balance remains due on the note; and (3) demand on the maker for payment has been made and refused, leaving the maker in default. *Pacific Carlton Dev. Corp. v. Barber*, 95 S.W.3d 159, 162–63 (Mo. Ct. App. 2003). There is no dispute that the Note is valid and signed by the Benchmark Facilities, the balance remains due, and demand for payment has been made and refused in this case. Therefore, the Court will also grant summary judgment on Count II in favor of Select as against the Benchmark Facilities.

In order to recover against the Guarantors in this case, Select must show (1) the Guarantors executed the guaranty, (2) the Guarantors unconditionally delivered the guaranty to Select, (3) Select, in reliance on the guaranty, extended credit to the debtors, the Benchmark Facilities, and (4) there is currently due and owing some sum of money to Select that the guaranty purports to cover. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). There is no dispute that the Guarantors executed and unconditionally delivered the guaranty, Select continued to provide services in reliance on the guaranty, and the requested amount is currently due and owing under both the Payment Plan Agreement and the Note, which the guaranty purports to cover. Therefore, the Court will grant summary judgment on Counts I and II in favor of Select as against the Guarantors.

The total amount due to Select by all Defendants, jointly and severally, is $3,720,932.30, representing the Principal Amount, damages for services rendered from December 2012 through October 2013 in the amount of $1,099,901.21, and interest on the Principal Amount in the amount of $369,493.15.

In addition, Select has requested attorneys' fees. Although Defendants have not contested Plaintiffs' request for fees, the Court notes that the Therapy Services Agreement provides that in the event of a suit, "each party shall be responsible for his own attorney's fees" (Doc. No. 29-1 at 10), and the Payment Plan Agreement does not appear to reference attorneys' fees in the event of a breach of payment obligations. However, the Note provides that in the event of default, Select may recover attorneys' fees and costs from the Benchmark Facilities. (Doc. No. 41-4 at 3.) Additionally, the

guaranty makes the Guarantors separately liable for attorneys' fees. (Doc. No. 41-3 at 10.) *See McCarthy v. Beal Bank, SSB,* No. 03-0907-CV-W-DW, 2005 WL 2260859, at *1 (W. D. Mo. Sept. 15, 2005) (Under Missouri law, "[i]f a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must award them to the prevailing party."), *citing Magna Bank of Madison County v. W.P. Foods Inc.,* 926 S.W.2d 157, 162–63 (Mo. App. 1996). Therefore, the Court is inclined to grant Select's request for attorneys' fees with respect to Select's suit on the Note against all Defendants in Count II. The Court will require supplemental information from Select regarding the amount and reasonableness of attorneys' fees incurred with respect to Count II after resolution of the remaining claim in this case, Count III, and entry of judgment. *See Dalton Petroleum, Inc. v. Devlin Energy Grp., L.L.C.*, No. 1:03 CV 35ERW, 2005 WL 1518391, at *1 (E.D. Mo. June 27, 2005) ("Missouri courts have found that 'as a matter of public policy, reasonableness is an implied term in every contract for attorney's fees.'"), *citing State ex rel. Chase Resorts v. Campbell*, 913 S.W.2d 832, 835 (Mo. App. Ct. 1995).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment on Counts I and II of Plaintiff's complaint is **GRANTED** in the amount of $3,720,932.30. (Doc. No. 40).

**IT IS FURTHER ORDERED** that upon resolution of all remaining claims and entry of judgment in this case, the Court shall set a schedule for the submission of

7

appropriate documentation in support of Plaintiff's request for attorneys' fees with respect to Count II.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of December, 2014